# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FIRSTENERGY SOLUTIONS CORP.,** | : | |
| Plaintiff, | : | 3:14-CV-00378 |
| v. | : | (JUDGE MARIANI) |
| **EMPIRE SCHUYLKILL, L.P.,** | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On April 9, 2014, the Clerk of the Court entered a default in favor of Plaintiff FirstEngery Solutions Corporation ("FES"). (Doc. 7). As a result, on April 11, 2014, Defendant Empire Schuylkill, L.P. ("Empire") filed a Motion to Set Aside Default. (Doc. 9). For the reasons set forth below, Defendant's Motion will be granted.

### II. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

On April 11, 2011, FES executed a Customer Supply Agreement ("Supply Agreement") to provide electricity for the Schuylkill Mall ("Mall"), a mall located in Frackville, Pennsylvania and owned by Empire. (Compl., Doc. 1, at ¶¶ 2, 5). The Supply Agreement listed "Empire Schuylkill Mall" as "Customer" and was signed on behalf of "Empire Schuylkill Mall" by an "Authorized Agent of PEG." (Doc. 1, Ex. 1, at 1, 7). According to Empire, "PEG" stands for Patriot Energy Group Inc., an entity which acted as FES's agent. (Reply Br.,

Doc. 11, at 5; Proposed Answer to the Complaint ("Proposed Answer"), Doc. 9, Ex. H, at ¶ 9).

FES asserts Empire violated the Supply Agreement on January 10, 2014, by switching electricity providers. (Compl. at ¶ 18). On January 13, 2014, FES sent Empire a notice of default stating that, pursuant to paragraph 24(a) of the Supply Agreement, Empire had fifteen business days to cure the breach. (Id. at ¶¶ 17, 19; Ex. 5 to Compl., Doc. 1-6). FES subsequently initiated the instant action on February 28, 2014. (Doc. 1).

Empire was served on March 7, 2014. (Doc. 5). Consequently, Empire had until March 28, 2014 to respond to the Complaint pursuant to Fed. R. Civ. P. 12(a)(1)(A).

On March 10, 2014, counsel for Empire, A. Grant Phelan ("Phelan"), contacted FES's local counsel, Rebeca Price ("Price"). (Phelan Decl., Doc. 9-3, at ¶ 3; Hart Aff., Doc. 10-4, at ¶ 4). Jennifer Hart ("Hart"), FES's counsel in Ohio, returned Phelan's call on March 11, 2014. (Id.). On either March 12 or 15, 2014, Phelan and Hart discussed a possible settlement. (Phelan Decl. at ¶ 4; Hart Aff. at ¶ 5). According to Phelan, at the conclusion of their conversation, Hart agreed that Empire would have an extension to file its response to the Complaint as settlement negotiations continued. (Phelan Decl. at ¶ 4). Phelan avers that he specifically asked, "So I assume that we have an extension to file a response until these negotiations are concluded?" (Id.). Hart allegedly responded, "That's fine." (Id.).

Although Hart acknowledges that Phelan asked for an extension, she denies agreeing to his request. (Hart Aff. at ¶¶ 5-6). According to Hart, she informed Phelan that

she could not consent to an extension without first consulting her client. (*Id.* at ¶ 6). Following their conversation, Phelan and Hart engaged in correspondence, primarily by email, attempting to set a time to further discuss settlement. (*See* Phelan Decl. at ¶¶ 5-8; Hart Aff. at ¶¶ 6-11). Both attorneys claim that the other did not promptly respond to their correspondence. (*See id.*).

Despite several emails, no further settlement negotiations occurred. (*See id.*). On April 7, 2014, FES filed a request for entry of default. (Doc. 6). According to Phelan, FES filed the request without notifying him that it was terminating settlement negotiations. (Phelan Decl. at ¶ 7). The Clerk of the Court entered a default on April 9, 2014. (Doc. 7). On April 10, 2014, Carl Engel ("Engel"), another attorney for Empire, allegedly called Price to request that FES withdraw the default. (Phelan Decl. at ¶ 8). Price informed Engel that FES's Ohio counsel would contact him. (*Id.*). After FES allegedly failed to return Engel's call (*id.*), Empire filed a Motion to Set Aside Default on April 11, 2014. (Doc. 9).

Empire attached to its Motion an Answer to the Complaint, which included affirmative defenses and a counterclaim. (Doc. 9, Ex. H). In the Answer, Empire admits owning the Schuylkill Mall but denies being a party to the Supply Agreement. (*Id.* at ¶¶ 2, 5). It observes that the Supply Agreement was signed on behalf of FES and "Empire Schuylkill Mall," an entity which, according to Empire, does not exist. (*Id.* at ¶ 5). As an affirmative defense, Empire denies breaching any agreement with FES. (*Id.* at 14). Empire's

counterclaim alleges six causes of action against FES with respect to its alleged breach of an oral agreement.[1] (*Id.* at ¶¶ 33-62).

### III. ANALYSIS

"An entry of default is a purely ministerial act carried out by a court clerk on request in cases in which a defendant has 'failed to plead or otherwise defend.'" *Sourcecorp Inc. v. Croney*, 412 Fed. App'x 455, 457 n.2 (3d Cir. 2011) (quoting Fed. R. Civ. P. 55(a)). An entry of default differs from a default judgment. *Joe Hand Promotions, Inc. v. Yakubets*, 3 F.Supp.3d 261, 270 n.5, (E.D. Pa. 2014). Although Fed. R. Civ. P. 55(c) governs both, the Third Circuit has explained:

> There is a distinction between a default standing alone and a default judgment. If a judgment by default has been entered, it may be set aside "in accordance with Rule 60(b)." *Id.* Less substantial grounds may be adequate for setting aside a default than would be required for opening a judgment. Thus, "(a)ny of the reasons sufficient to justify the vacation of a default judgment under Rule 60(b) normally will justify relief from a default entry and in various situations a default entry may be set aside for reasons that would not be enough to open a default judgment." 10 C. Wright & A. Miller, Federal Practice and Procedure s 2696 at 334 (1973).

*Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982).

Whether good cause exists for setting aside an entry of default is left to the sound discretion of the Court. *Dizzley v. Friends Rehab. Program, Inc.*, 202 F.R.D. 146, 147 (E.D.

---

[1] According to Empire, the only agreement that existed between Empire and FES was an oral contract wherein FES agreed to supply electricity to the Schuylkill Mall at a fixed price for a two-year term. (Counterclaim, Doc. 9, Ex H, at ¶ 1). Empire alleges that due to financial concerns, prior to the expiration of the two-year term, it consulted Patriot Energy Group, Inc. ("PEG"), an agent of FES, to try to find new sources of electricity. (*Id.* at ¶¶ 8-9). PEG allegedly suggested Empire enter into an electricity supply contract known as the "Freedom Plan." (*Id.* at ¶ 10).

4

Pa. 2001) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984)). As a general matter, the Third Circuit has indicated "that it does not favor defaults, and that in a close case doubts should be resolved in favor of setting aside the default and obtaining a decision on the merits." *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982). In determining whether there exists good cause that would justify setting aside a default, courts consider three factors: "'(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct.'" *Braverman Kaskey, P.C. v. Toidze*, --- Fed. App'x ---, 2015 WL 149955, at *4 (3d Cir. 2015) (quoting *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985)).

Here, Empire filed its Motion to Set Aside Default two days after the default was entered.

FES "concedes that it will not be prejudiced" if the Court were to set aside the default. (Br. in Opp., Doc. 10, at 5). Rather, it appears the entry of default was the product of "a mere 'breakdown in communication' between attorneys," rather than culpable conduct on the part of Empire. *See Collura v. Ford*, 303 F.R.D. 57, 78 (E.D. Pa. 2014) (brackets omitted) (quoting *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 420-21 (3d Cir. 1987)). In the weeks immediately prior to the entry of default, counsel corresponded via email to try to set a date to discuss a settlement. Despite this, no further settlement negotiations occurred. According to Empire's counsel, he believed FES had agreed to an

extension for Empire to file a response to the Complaint and for settlement discussions to continue.[2] Empire's counsel further avers that FES filed a request for entry of default without notifying him that it was terminating settlement negotiations.

Lastly, Empire has offered several facially meritorious defenses. To establish a meritorious defense for the purposes of setting aside a default, the moving party faces a low burden. See *Collura*, 303 F.R.D. at 77. A defendant need only to produce a defense that is "litigable," *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000), "or not 'facially unmeritorious.'" *Collura*, 303 F.R.D. at 77 (quoting *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)) (internal quotation marks omitted). Empire has met this burden.

Empire alleges that it did not violate any written agreement with FES. According to Defendant, it did not sign, and it was not a party to, the Supply Agreement. The Supply Agreement was signed by PEG, an agent of FES, on behalf of "Empire Schuylkill Mall," an entity which does not exist. Further, Empire argues that the Complaint does not allege that PEG acted as its agent.

In addition to asserting that it did not breach the Supply Agreement, Defendant contends that PEG was not unjustly enriched. To the contrary, Empire argues that the

---

[2] In the Court's March 4, 2014 letter to FES's counsel informing them of the initial steps that would be taken to ensure the case reached a "just, speedy, and inexpensive determination", it informed Plaintiff's counsel that they "are advised to refrain from entering into agreements for extensions of time for filing an answer or other responsive pleading to the complaint without court approval." (Doc. 4 at 1). Had counsel adhered to this statement, the present motion would likely not be at issue, thus saving both the parties and this Court time and resources.

equities rest in its favor since it was not a party to the Supply Agreement and since FES allegedly violated the oral agreement it had reached pursuant to the Freedom Plan.

In sum, each of the factors discussed above favors setting aside the default.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Set Aside Default (Doc. 9) will be granted. A separate Order follows.

/s/ Robert D. Mariani
Robert D. Mariani
United States District Judge